**In re FREEDLANDER, INC. THE MORTGAGE PEOPLE, Debtor.**

**Bankruptcy No. 88–00794–RS.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

July 27, 1989.

See also 95 B.R. 390.

George B. Little, Little, Parsley & Cluverius, P.C., Richmond, Va., for debtor.

Stanley K. Joynes, III, Rilee, Cantor, Arkema & Edmonds, P.C., Richmond, Va., for applicant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

■ This matter comes before the Court upon the application of Stanley K. Joynes, III, Esq. and the law firm of Rilee, Cantor, Arkema & Edmonds, counsel for an official committee ("Rilee, Cantor" or "Counsel"), requesting compensation for fees and expenses incurred during the time that this case was under Chapter 11. Finding that much of Counsel's work was performed during the period after it became clear that the debtor planned to convert the case to Chapter 7, the Court determines that a portion of the services actually performed was not "necessary" within the meaning of 11 U.S.C. § 330. As such the Court will award compensation and reimbursement of expenses in a reduced amount.

## FINDINGS OF FACT

Freedlander, Inc. and a number of related entities (collectively "Freedlander") filed petitions commencing Chapter 11 cases on April 12, 1988. These cases were procedurally consolidated on April 15, 1988.

On May 4, 1988, the United States Trustee appointed the Official Committee of Private Noteholders (the "Committee") pursuant to 11 U.S.C. § 1102. Apparently, the Committee retained Rilee, Cantor as its legal counsel that same day. An application for employment was filed herein on May 6, 1988, and the Court approved this retention by an order, entered June 16, 1988, *nunc pro tunc* to May 6, 1988.

Several days after commencement of the Chapter 11 cases, on April 18, 1989, one of Freedlander's largest creditors, First Jersey Savings & Loan Association, moved for the appointment of a trustee. A number of other parties, including the Federal National Mortgage Association, tendered similar motions that same day and in the days following. The hearing on the motions for appointment of a trustee was scheduled for May 16, 1988.

These motions were contested by the debtor, and extensive discovery commenced. Thereafter, Freedlander filed, and requested an expedited hearing on, a motion authorizing it to borrow funds and enter into a management contract with a third party to operate the debtor's business. It wanted to be heard on this issue prior to the previously scheduled hearing on the appointment of a trustee. Freedlander contended that any concerns over past mismanagement or acts of fraud would be allayed if an outside manager could be brought in to operate the debtor-in-possession. This, Freedlander argued, would obviate the necessity for appointing a trustee. In keeping with Freedlander's intention to seek to be heard on its motion to borrow funds and to enter into a management employment contract, the debtor, on May 6,

1988, requested an expedited hearing on its motion for a continuance of the hearing on the appointment of a trustee, and the Court convened a hearing on this motion on May 9, 1988.

Counsel for the Committee was present at this May 9 hearing, at which the Court denied the debtor's motion for a continuance of the hearing on the appointment of a trustee. At that time, evidence presented to the Court, in the form of letters from debtor's counsel to counsel for parties moving for the appointment of a trustee, made clear the debtor's position that, unless the debtor could be heard on its request to borrow funds and substitute new management prior to the trustee hearing scheduled for May 16, 1988, the debtor intended to exercise its absolute right to convert the cases to Chapter 7. The Court finds as a matter of fact that the debtor's intention to convert was plainly revealed by these letters, and that all parties present at the May 9 hearing including the Committee by its counsel were at that time put on notice that conversion was imminent.

The debtor, on Thursday, May 12, 1988, requested a stay pending appeal of the Court's order denying a continuance of the trustee hearing. In open court, and with Counsel for the Committee present, debtor's local counsel stated unequivocally that no trustee hearing would ever take place. The debtor would either get a continuance of the trustee matter, by obtaining a stay pending appeal from either this Court or the district court, or would convert the cases prior to the consideration of the trustee motion. At the close of the May 12 hearing, the Court denied the debtor's request for a stay pending appeal. Later that same day the United States District Court also denied the debtor a stay. And upon motion of the debtor, the cases were converted to Chapter 7 on the morning of Monday, May 16, 1988, prior to the scheduled commencement of the hearing on the appointment of a trustee.

1. Of course, the right to appeal and the right to request a stay pending appeal were available

For its application for compensation, Counsel for the Committee is requesting payment for services performed from May 6 through May 16, 1988. A total of $8,164.50 in fees, representing compensation for 68.6 hours of services, and $113.60 in expenses is sought. For purposes of this memorandum, the Court does not question any time spent prior to May 9, 1988.

As stated above, the Court believes that the imminence of conversion was plainly apparent as early as May 9, 1988, when the evidence presented to the Court made known the debtor's intention. Nevertheless, the Court can envision the possibility that the Committee had a continuing need for some legal services in the period between the time that the motion requesting a continuance of the trustee hearing was denied by this Court and the time that a motion requesting a stay pending appeal was denied by the district court on May 12.[1] In that less than four day period, however, Counsel recorded 36.7 hours of legal services. Indeed, Mr. Joynes himself billed 21.5 hours between the 10th and 12th. The Court notes that at the requested billing rate of $120 per hour the 36.7 hours represents $4,404 in fees. Counsel's record of time spent in this period is reproduced below.

| | | |
|---|---|---|
| 05/09/88 | Review debtor's motion re loan, etc.: phone conference with A. Mullian re: status, phone conference with B. Pustilnik re same | 1.9 hours |
| | Attendance at hearing re: debtor's motion/authority to borrow; phone conference with A. Mullian; conference with L. Fox re: committee meeting; phone conference with Wolfson and G. Little re: debtors' intentions | 5.5 hours |
| | Legal research for SKJ | .4 hours |
| 05/10/88 | Phone conference with Fox re: agenda for committee meeting | .3 hours |
| | Drafting intervention motion and order | 1.3 hours |
| | Attendance at committee meeting; phone conference with L. Fox; conference with a. Mullian and BEA re: how to proceed | 4.2 hours |

only to the debtor.

| Date | Description | Hours |
|---|---|---|
| | Phone conference with Wolfson re: timing, procedure | .3 hours |
| | Committee meeting and conference with Mullian | 4.2 hours |
| 05/11/88 | Phone conference with R. Schwartz; phone conference with Heyward and Forrest re: Committee's intentions | .8 hours |
| | Phone conference with G. Little; phone conference with L. Fox re: scheduling | .4 hours |
| | Legal research and drafting re: Committee's motion for reconsideration | 5.2 hours |
| | Phone conferences with Clerk (2) re: scheduling; arranging for delivery of motion | .6 hours |
| | Review Shelley order; phone conference with Cann re: motion copies; review pleadings, file for motions | .7 hours |
| | Phone conference with Cann re: motion for continuance | .3 hours |
| | Meet with Buis re: motion and affidavit | .5 hours |
| | Drafting of motion and consent order on administration | 4.4 hours |
| | Phone conference with Cann re: consent motion | .3 hours |
| 05/12/88 | Preparation for hearing; attendance at hearing | 2.5 hours |
| | Drafting of appellate brief | 1.5 hours |
| | Attendance at arg. before J. Williams; phone conference with L. Fox; phone conference with B. Cann; phone conference with G. Little; and phone conference with A. Mullian | 3.7 hours |

Although the Court cannot conclude that the services provided in this period were completely unnecessary, the Court believes that much of the time spent was simply excessive. As such, and for the reasons stated below, the Court will order a 50% reduction in the award of compensation for this period.

As previously stated, the Court can at least imagine that the Committee had some need for limited legal services prior to the order of the district court denying the debtor a stay pending appeal. However, from the hour on the 12th of May when the district court denied the stay until the time when the Committee was dissolved by the conversion to Chapter 7 on May 16, this Court can conceive no reason why any extensive legal services were necessary to the Committee.

Following the district court's decision, the only remaining contingency on the debtor's stated intention to convert was erased. With the hearing on the appointment of a trustee scheduled for the morning of Monday, May 16, 1988, it was clear that the cases would be converted no later than that time.

Nevertheless, between Friday the 13th and Monday the 16th, Counsel expended an additional 15.3 hours on Committee matters. At the requested billing rate, this time represents a total of $1,836.00.

Counsel's breakdown of fees for this period is here reproduced:

| Date | Description | Hours |
|---|---|---|
| Fri. 05/13/88 | Phone conference with G. Little; phone conference with Brad Cann re: options; phone conference with L. Fox re: same; phone conference with A. Mullian re: events of 5/12. | 1.1 hours |
| | Revision of consent order re: disbursements, docs, etc. | 3.2 hours |
| Sat. 05/14/88 | Phone conference with Wolfson re: debtor's intentions, etc. | .6 hours |
| Sun. 05/15/88 | Drafting order re: documents, trustee, etc. | 5.9 hours |
| Mon. 05/16/88 | Revision of motion re: § 541(d); phone conference with various parties; attendance at hearing | 4.5 hours |

In addition, counsel incurred $38.85 in expenses during this time. For the reasons stated below, the Court concludes that these services and concomitant expenses for which compensation and reimbursement is requested were not all "necessary" within the meaning of 11 U.S.C. § 330.

## CONCLUSIONS OF LAW

### I. Introduction

Counsel for the Committee was appointed as a professional person pursuant to § 1103 of the Code which permits an official committee, with court approval, to "select and authorize employment ... of one or more attorneys ... to represent ... such committee." 11 U.S.C. § 1103. As

stated above, the Court approved the Committee's retention of Counsel *nunc pro tunc* to May 6, 1988. Section 330 of the Code permits a court "to award to a . . . professional person employed under section . . . 1103 . . . reasonable compensation for actual, necessary services rendered by such . . . professional person . . . based on the nature, the extent, and the value of such services . . ." 11 U.S.C. § 330.

Pursuant to this provision the Court concludes that much of the time spent after the May 9 hearing was excessive and unnecessary, and will order the requested compensation for this period reduced by one-half. In addition, the Court determines that Counsel's services performed after conversion became a near certainty—that is, after the district court's denial of a stay pending appeal—were not "necessary," and will deny compensation for these services entirely, except that the Court will allow compensation for two hours of services in communicating with his client and preparing for and attending the May 16, 1989 hearing on the appointment of a trustee. In effect, the trustee hearing never took place, because the debtor converted prior to its commencement, but as counsel of record for the Committee, counsel was privileged to attend, and to be paid for doing so.

## II. The *Johnson* Test

The Court notes that in reviewing this application for compensation the Court was not required to utilize the so-called "Johnson" test. The twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.1978), are used to analyze the *reasonableness* of requested compensation. As stated above, the Court here focuses upon whether the services performed were *necessary* within the meaning of 11 U.S.C. § 330. *See In re Wiedau's, Inc.*, 78 B.R. 904 (Bankr.S.D.Ill.1987).

Nevertheless, application of the *Johnson* factors to Counsel's request would lead to a similar result. As enunciated by the court in *Johnson*, the factors used to analyze the reasonableness of attorney's fees are:

1) the time and labor expended;
2) the novelty and difficulty of the questions presented;
3) the skill required to properly perform the legal services rendered;
4) the attorney's opportunity costs in pressing the instant litigation;
5) the customary fee for the work;
6) the attorney's expectations at the outset of the litigation;
7) the time limitation imposed by the client or circumstances;
8) the amount in controversy and the results obtained;
9) the experience, reputation and ability of the attorney;
10) the undesirability of the case within the legal community in which the case arose;
11) the nature and length of the professional relationship between attorney and client; and
12) attorney's fee awards in similar cases.

*Johnson, supra*, at 717–19.

Focusing on those factors applicable to Counsel's fee request,[2] the Court would reach the following conclusions. First, given the nature of the tasks presented to Counsel, as well as the previously discussed factual context in which these tasks arose, the time and labor expended were unreasonably excessive. To give but a single example, on May 11, 1988, Counsel expended 5.2 hours ($624.00) in researching and drafting a motion requesting reconsideration of the Court's order denying the debtor's motion for a continuance of the trustee hearing. In the Court's opinion, the Committee had only an extremely attenuated interest in delaying the trustee hearing—indeed, it is possible that the

---

**2.** Several of the *Johnson* factors are simply inapposite to consideration of Counsel's fee application. For example, no one questions Counsel's experience, reputation or ability, and no issue arose as to the desirability, or lack thereof, of the case.

Committee lacked standing to even raise the motion for consideration. As such, the Court finds this and other similar expenditures of time and effort to be unreasonable.

Second, the questions presented by Counsel's representation of the Committee during the period when the case progressed toward conversion were neither novel nor difficult. Given the fact that the debtor possessed an absolute right to convert, as well as the fact that the Committee was powerless to affect the exercise of this right, the majority of services required were simply ministerial. Prior to May 12, 1988, during the time in which it was conceivable that conversion could be avoided, some truly legal services may have been necessary in preparing for the hearing on the appointment of a trustee. Much of Counsel's time, however, was spent merely communicating and coordinating with Committee members.

This leads to the third factor: the skill required to perform the services rendered. A significant portion of Counsel's time was spent performing tasks which in light of the pending conversion should have demanded relatively little skill.

In reaching its determination that for for services rendered after the Court hearing on May 9, part of the request must be reduced and another part denied entirely, the Court gives consideration to the time limitation imposed by the circumstances of this case. The Court is aware that Counsel was appointed less than two weeks prior to the scheduled hearing on the appointment of a trustee. For this reason, the Court is allowing partial compensation from May 9 through 12, conceding that, at least to a certain extent, it was not unreasonable for Counsel to get "swept along" by the rush of events. The severity of time constraints, however, is no excuse for the failure of skilled attorneys to adequately survey the legal landscape. As the Court has stated, the approaching conversion should have been seen as early as May 9, and could not have been missed after May 12, no matter how strict or distracting the time limits placed upon Counsel.

Finally, the Court examines the seventh *Johnson* factor, that pertaining to "the amount in controversy and the results obtained." As applied to Counsel's application, the Court believes this factor requires an examination of Counsel's services in light of the possible benefits which could have been imagined when the services began and the actual outcome resulting from performance of those services. Here, no matter how skillful or extensive the services, Counsel cannot have expected to prevent conversion to Chapter 7. The right to convert belonged unfettered to the debtor. And in fact, Counsel's services were for naught: conversion occurred on Monday, May 16, 1988.

In the average case, comparison of results obtained with those expected may be, at times, unreasonable. Prospects for success often appear bright at the outset, even though dismal results may eventually follow. To judge an attorney's efforts in the harsh light of hindsight can under some circumstances be unfair. No unfairness exists in this case, however, where the end result was the only outcome which could have been reasonably contemplated once the debtor's intent to convert became apparent. .

### III. Effect of Conversion

In reaching its determination that much of Counsel's work was not "necessary" within the meaning of § 330 the Court relies upon the plain meaning of the Bankruptcy Code which illuminates the effects of conversion from Chapter 11 to Chapter 7. The entry of the May 16, 1988 order converting the case had the effect of granting a new "Order For Relief" under Chapter 7, and, with certain exceptions, terminated the previous Order For Relief entered pursuant to Chapter 11. 11 U.S.C. § 348.

A review of § 348 reveals no provision authorizing the continuance of a Chapter 11 official committee post conversion. Instead, § 705 of the Code provides that under Chapter 7 certain creditors may elect a committee of creditors to represent their interest during the administration of the

Chapter 7 estate. The Code does not, however, provide for the compensation of attorneys representing a Chapter 7 creditors committee, and, in fact, does not authorize such a committee to retain the services of professionals.

■ As a consequence, the Court has previously concluded that conversion to Chapter 7, and the ensuing termination of the Chapter 11 Order For Relief, results in the dissolution of any committee appointed under 11 U.S.C. § 1102, and similarly prevents any award of attorney's fees to committee counsel for post-conversion services. *See Kel–Wood Timber Products Co.*, 88 B.R. 93 (Bankr.E.D.Va.1988).[3] For the same reasons that compensation to official committee counsel for post-conversion services is denied, the Court will deny compensation where the services are performed in the face of imminent conversion.

IV. Conclusion

The necessity of particular work performed by professionals is ultimately determined by the Court based upon hindsight and the Court's experience, observations and expertise. *In re Pettibone*, 74 B.R. 293, 308 (Bankr.N.D.Ill.1987). In this case, the Court concludes that following the May 9 hearing Counsel should have realized that in the face of probable conversion anything but minimal services would be excessive and unwarranted. Further, by no later than Thursday, May 12, 1988, Counsel should have known that conversion was inevitable, and that any further services performed or expenses incurred would be essentially unnecessary except the two hours previously alluded to.

In an analogous case, the court in *In re S & E Oil Co., Inc.* reduced the requested compensation for the attorney for the debtor where "[l]ong prior to conversion it should have been obvious to counsel that the debtor would not be able to reorganize." 66 B.R. 6 (Bankr.W.D.La.1986). The court found that the services per-

formed were not "necessary" within the meaning of 11 U.S.C. § 330.

The "writing on the wall" was even more clear in the instant case. Counsel should have restricted its efforts after May 9 with conversion plainly in prospect. And Counsel should have ceased all work when, at least by May 12, 1988, it became apparent that conversion inexorably approached. For the reasons set out above, Counsel's requested fees and expenses will be reduced by $3,836.85, and a total of $4,441.25 in compensation and reimbursement will be allowed as administrative expenses of the Chapter 11 case.

**3.** Although *Kel–Wood* was decided after Counsel rendered its services herein, the Court believes that the effect of conversion upon official Chapter 11 committees and their counsel is readily apparent from the face of the applicable Bankruptcy Code provisions.