**In re L.D. ALDERSON, Debtor.**

**Bankruptcy No. 89–50106.**

United States Bankruptcy Court,
D. South Dakota, W.D.

April 27, 1990.

L.D. Alderson, Hayes Center, Neb., pro se.

Rodney C. Lefholz, Rapid City, S.D., former atty. for L.D. Alderson.

Dennis C. Whetzal, Rapid City, S.D., Trustee.

Thomas A. Lloyd, Asst. U.S. Atty., Pierre, S.D., for the U.S.

Andrew B. Reid, Hot Springs, S.D., for Eunice I. Gull & Roger Armstrong.

Robert A. Martin, Rapid City, S.D., for Alexander Drilling Co.

Al Arendt, Pierre, S.D., for Dorothy Clark.

Rick Entwistle, Sioux Falls, S.D., for First Bank of South Dakota.

Michael M. Hickey, Rapid City, S.D., for Norwest Bank.

## MEMORANDUM DECISION

IRVIN N. HOYT, Chief Judge.

The Court has before it: (1) Attorney Rodney C. Lefholz's application for compensation and reimbursement of expenses and the objections thereto, (2) Attorney Lefholz's motion to reconsider the Court's order of November 22, 1989, assessing terms against Attorney Lefholz, (3) creditor Eunice I. Gull's motion for terms against Attorney Lefholz and the debtor, L.D. Alderson, and (4) creditors Roger and Cindy Armstrong's motion for terms against Attorney Lefholz and the debtor.

L.D. Alderson filed a petition under Chapter 12 of the United States Bankruptcy Code on May 8, 1989. The first meeting of creditors was held on July 6, 1989. On August 3, 1989, Alderson filed his Chapter 12 plan of reorganization. Creditors of L.D. Alderson, especially Eunice Gull, Roger Armstrong and Cindy Armstrong, submitted numerous motions. Motions included were to dismiss or convert, remove the debtor in possession, relief from the automatic stay, enjoin the use of cash collateral, and objections to confirmation of Alderson's plan. Adversary proceedings to determine the dischargeability of debts were initiated by Mrs. Gull, Roger and Cindy Armstrong and Norwest Bank. Hearings had to be continued on several matters due

to the debtor's failure to furnish necessary records and information. In the interim, the debtor's income was frozen and ordered to be paid directly to the Trustee.

On October 3, 1989, the Court held a lengthy hearing on the above-mentioned motions. Witnesses included the debtor, Fall River County Sheriff Leo Bray, Mike Cross of the United States Forest Service, and Perle O'Daniel and Mike Assman, farmer/ranchers. After hearing the evidence, the Court converted Alderson's bankruptcy to Chapter 7 because of the fraud that permeated his Chapter 12.

After conversion, Mrs. Gull and Roger and Cindy Armstrong filed motions for: relief from the stay, to enjoin the use of cash collateral, for terms and contempt, turnover of property, determination of executory contracts, and objections to claimed exemptions. An expedited hearing on these motions was set for October 20, 1989, in Pierre. At the beginning of the October hearing, Attorney Lefholz made an oral motion to withdraw as debtor's counsel because of conflicts between Attorney Lefholz and the debtor. A hearing on Attorney Lefholz's motion to withdraw was set for November 8, 1989.

The timing of Attorney Lefholz's motion to withdraw stymied the proceedings on the other motions. The Court was forced to continue the majority of the motions set for hearing and generally ruled so as to preserve the estate and maintain the status quo of the case. The Court granted terms against Attorney Lefholz for Attorney Andrew Reid's time and expenses in traveling to Pierre for the expedited hearings.

On December 12, Attorney Lefholz filed a motion to reconsider the Court's assessment of terms against him and also submitted an application for final compensation and reimbursement of expenses. Mrs. Gull and Roger and Cindy Armstrong objected to Attorney Lefholz's motion to reconsider. Objections to Attorney Lefholz's fee application were received from Mrs. Gull, Roger and Cindy Armstrong, Norwest Bank, and the United States Trustee. The initial hearing on the fee application was held on January 9, 1990. The Court

determined that the application was deficient and continued the hearing to afford Attorney Lefholz an opportunity to amend his fee application. Attorney Lefholz submitted an amended fee application on January 24, 1990. Mrs. Gull again objected to the application.

On February 5, 1990, a final hearing was held concerning the four motions currently pending before the Court. The Court took the matters under advisement.

The basis of Attorney Lefholz's motion to reconsider is that Attorney Reid's motion for terms and contempt created the conflict of interest that caused Attorney Lefholz to withdraw. Further, Attorney Lefholz argues that the expedited hearings set for October 20 were unnecessary as evidenced by later continuances, and that the expense of the expedited hearings in Pierre could have been minimized had the matters been handled by teleconference.

Attorney Reid responded that Attorney Lefholz's motion was baseless and untimely. The Court did not learn of Attorney Lefholz's intent to withdraw as counsel until the October 20 hearing in Pierre. It did not appear that Attorney Reid knew of Attorney Lefholz's decision to withdraw as Attorney Reid was ready to proceed with the scheduled hearings.

While Attorney Lefholz is correct that the hearings scheduled for October 20 were continued to November 8 and again to December 11, it was not because of the Court's or Attorney Reid's inability to proceed. The first continuance was necessitated by Attorney Lefholz's motion to withdraw, and the second continuance was due to Mr. Alderson's inability to secure substitute bankruptcy counsel. The Court also is not persuaded by Attorney Lefholz's contention that expenses could have been minimized had the hearings set for Pierre been handled by teleconference. Hearings of this nature are not routine or uncontroverted, and they are not compatible with a teleconference disposition.

■ It appears to the Court that Attorney Lefholz's decision to withdraw could and should have been made known before

Attorney Reid departed for Pierre. Attorney Lefholz's motion to reconsider the terms against him to compensate Attorney Reid for the time and expenses he incurred in coming to Pierre for the expedited hearing will be denied.

The Court will next examine the motions for terms filed by Mrs. Gull and Roger and Cindy Armstrong against Attorney Lefholz and the debtor. These motions ask that Attorney Lefholz and the debtor be required to pay Attorney Reid's costs and expenses. The bases of the motions against the debtor are his fraudulent activity throughout the pendency of this case, his failure to prepare for the Section 341 meeting and the 2004 examination, his failure to comply with discovery requests, and his abuse of the bankruptcy process by the perpetuation of his wrongful possession of the movants' property. Requests for terms against Attorney Lefholz and the debtor are based upon their awareness of the fraudulent nature of the debtor's statements and schedules, their failure to amend the same, and their misrepresentation to Attorney Reid concerning the availability of the debtor's financial records.

The motions for terms are made pursuant to 28 U.S.C. § 1927, and Federal Rules of Civil Procedure 11, 26(g), 37 and 56(g). These Rules comport with Bankruptcy Rules 9011, 7026, 7037 and 7056. Rules 7026, 7037 and 7056 apply in adversary proceedings and contested matters. However, it is questionable whether a bankruptcy court has jurisdiction to impose sanctions under 28 U.S.C. § 1927, *In re Arkansas Communities, Inc.*, 827 F.2d 1219 (8th Cir.1987), although other courts have held that such jurisdiction exists. *See, e.g., In re Usoskin*, 61 B.R. 869 (Bankr.E.D.N.Y. 1986).

Attorney Reid's request first will be analyzed under Bankruptcy Rule 9011.

Bankruptcy Rule 9011 provides, in salient part:

Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney except a list, schedule, statement of financial affairs ... or

amendments thereto, shall be signed by at least one attorney of record[.] ... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Rule 9011 and its counterpart, Rule 11, are designed to discourage the filing of frivolous court papers or those that are legally unreasonable or without factual foundation. *Hartman v. Hallmark Cards*, 833 F.2d 117 (8th Cir.1987); *Kurkowski v. Volcker*, 819 F.2d 201 (8th Cir.1987). In *Lupo v. R. Rowland & Co.*, 857 F.2d 482 (8th Cir.1988), the Eighth Circuit also stated that the purpose of Rule 11 is to compensate the offended party for the expenses caused by a violation and also to penalize the offender.

■ A violation of Rule 9011 occurs when a party or attorney files or serves a document (1) not well grounded in fact, warranted by existing law or containing a good faith argument for a change of the existing law, or (2) for an improper purpose. *See* Byrne, Sanctions for Wrongful Bankruptcy Litigation, 72 Am.Bankr.L.J. 109, 114 (1988). *See also Robinson v. National Cash Register Co.*, 808 F.2d 1119 (5th Cir.1987). The Rule is intended to be vigorously applied to curb frivolous pleadings and other papers. *Adduono v. World Hockey Ass'n*, 824 F.2d 617 (8th Cir.1987).

However, it is not a panacea intended to remedy all manner of attorney misconduct. *Id.*

■ Under Rules 11 and 9011 the conduct of the non-movant is to be judged under a standard of "objective reasonableness." *E.E.O.C. v. Milavetz & Assoc., P.A.*, 863 F.2d 613 (8th Cir.1988). *See also Hartman, Adduono* and *Kurkowski, supra* and *O'Connell v. Champion Int'l Corp.*, 812 F.2d 393 (8th Cir.1987). Good faith is not a defense under Rule 11. *See Milavetz* and *Hartman, supra. See also Robinson, supra* and *Byrne* at 114.

■ Under Rule 9011, the attorney has a duty of undertaking a reasonable inquiry in a case to avoid the imposition of sanctions. However, the Rule does not mandate exhaustive research and investigation before commencing a bankruptcy case. *Byrne, supra* at 122 (citing *In re TCI, Ltd.*, 769 F.2d 441 (7th Cir.1985)). A lawyer who undertakes a reasonable inquiry before filing a petition or other paper will not suffer sanctions if, ultimately, the lawyer has been deceived by the client. *Byrne, supra* at 123 (citing *In re Ligon*, 50 B.R. 127 (Bankr.M.D.Tn.1985)). Moreover, lists, schedules and statements of financial affairs, and amendments thereto, are excepted from the papers that must be signed by the debtor's attorney. *See* B.R. 9011 advisory committee's note. Under B.R. 1008, the documents must be verified by the debtor. Thus, sanctions may not lie against an attorney for transgressions surrounding these documents. *See In re Brantley*, 84 B.R. 508 (Bankr.S.D.Oh.1988). If circumstances warrant, however, the court may determine whether the attorney should be suspended from practicing before the bankruptcy court. *Id.*

■ Even if the Rule did apply to schedules and statements, the Court would refrain from sanctioning Attorney Lefholz. Here, Attorney Lefholz was retained by a debtor whose bookkeeping methods were inadequate and unconventional. This made it possible for the debtor to conceal his true financial condition and hamper his attorney's ability to verify the accuracy of the information provided by the debtor. The amorphous condition of the debtor's records, coupled with the debtor's history of deception, leads the Court to conclude that Mr. Alderson was not forthright with his attorney when the schedules and statements were completed, and that the state of his books and records prevented his attorney from discovering the true facts surrounding the debtor's financial condition.

■ The Court also concludes that sanctions against Attorney Lefholz are not warranted because of the misrepresentations concerning the availability of the debtor's financial records. The Court was advised at numerous hearings that Mr. Alderson did not bring requested records to the hearing but would furnish them to Attorney Reid as soon as possible thereafter. The Court learned that the records had not been furnished as promised or were incomplete. Mr. Alderson denied attempting to withhold documents. On other occasions, Mr. Alderson stated that the requested documents had been forwarded to Attorney Reid or to his accountant when, in fact, this had not been done. Mr. Alderson would allow Attorney Reid to review his records when they were placed in the hands of his accountant but forbade the accountant from allowing Attorney Reid to photocopy the same, requiring that he copy needed information in longhand.

The Court cannot condone Mr. Alderson's attempts to frustrate Attorney Reid's conducting discovery, but the Court does not believe that Attorney Lefholz was involved in withholding the requested information from Attorney Reid. It appears that Mr. Alderson alone is responsible for thwarting Attorney Reid's discovery attempts. While Attorney Lefholz could instruct his client to cooperate in the discovery process, there is little that Attorney Lefholz could do to force his client to cooperate. There was no indication that Attorney Lefholz conspired with Mr. Alderson to frustrate the discovery process. The Court is satisfied that Mr. Alderson is the sole offender and accordingly will deny the motion for terms against Attorney Lefholz.

Mrs. Gull and Roger and Cindy Armstrong also move for terms under Bankruptcy Rules 7026(g), 7037(b)(2) and 7056(g). The Court does not believe that Bankruptcy Rule 7026(g) or 7056(g) would be applicable here. Rule 7026(g) requires sanctions where an attorney or party has signed requests, responses or objections to discovery, and its requirements and thrust are similar to that of Rule 9011. However, the record is devoid of any requests, responses or objections to discovery signed by Mr. Alderson or Attorney Lefholz, and sanctions would not lie under Bankruptcy Rule 7026(g).

■ Bankruptcy Rule 7056(g) relates to affidavits presented in bad faith or for the purpose of delay pursuant to a motion for summary judgment. It provides that the offending party or attorney must pay the costs attendant with the affidavit that are incurred by the other party. While four adversary proceedings were commenced in this case and summary judgment was granted in each, no affidavits were filed by the debtor prior to the Court's grant of summary judgment. While hand written documents from the debtor were received after the summary judgment hearings, these documents in no way increased the creditors' costs of obtaining summary judgment. Thus, sanctions would not lie under Bankruptcy Rule 7056(g).

■ Bankruptcy Rule 7037 provides for sanctions where an offending party fails to obey a court order to provide or permit discovery. Rule 7037(b)(2) provides in pertinent part:

If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . . . .

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Any party who seeks to evade or thwart full and candid discovery incurs the risk of serious consequences under this Rule. 8 C. Wright & A. Miller, *Federal Practice & Procedure*, § 2281 (1970). This Court entered such an order on September 18, 1989, requiring the debtor's tax returns and records be made available to creditors' counsel. In addition, the debtor was orally advised by the Court on many occasions to cooperate in the discovery process. The Court, earlier in this opinion, noted the debtor's lack of cooperation in the discovery process.

Due to fraud perpetrated by the debtor, this case was converted to Chapter 7. The Court's findings of fact and conclusions of law, entered October 31, 1989, set forth in detail the circumstances surrounding the debtor's activities. Most notable is that the debtor made intentional omissions, gave evasive responses, and made other fraudulent misrepresentations at the Section 341 meeting, the 2004 examination, and in hearings before this Court concerning the purchase and operation of the Gull Ranch and cattle transactions with Roger and Cindy Armstrong. The debtor's lack of cooperation in disclosing the true nature and extent of his financial condition seriously hampered the efforts of creditors' counsel and resulted in the continuance of several hearings set by this Court. The debtor's tactics and conduct frustrated the rights of his creditors and thwarted the bankruptcy process. His unjustifiable actions have caused the unnecessary escalation of legal fees and creditor costs. Mr. Alderson's activities warrant the granting of Rule 7037(b)(2) sanctions against him and in favor of Mrs. Gull and Roger and Cindy Armstrong.

The Court finds that Mr. Alderson violated Rule 7037(b)(2) through his omissions, misrepresentations, and lack of cooperation in discovery. Attorney Reid is directed to submit to the debtor and file with the Court an itemized schedule of fees and costs incurred through October 31, 1989, the date of entry of the Court's order of conversion. He may include fees and costs incurred in pursuing the motion for terms against the debtor. The debtor will be allowed ten days to submit a written response to the Court and opposing counsel. The Court will, thereafter, determine the sum allowable as terms under Rule 7037(b)(2).

Attorney Lefholz requests $11,525.65 in compensation and reimbursement of expenses attendant with this case. The time sheets attached to his application show his first entry to be on May 5, 1989, and the last entry to be on November 7, 1989. Expenses were first incurred on May 8, 1989, and last incurred on December 22, 1989.

Attorney Reid, on behalf of Mrs. Gull, objects to the fee application on numerous grounds but primarily because of the lack of success in confirming a Chapter 12 plan, the conversion of the case to a Chapter 7, and the deficiencies within the application itself.

Compensation of professionals is primarily governed by § 330(a) of the Code, which states:

> After notice ... the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtors attorney—
> (1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and
> (2) reimbursement for actual, necessary expenses.

Under B.R. 2016(a), an entity seeking compensation for services or reimbursement for expenses must file an application with the Court setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amount requested.

▆▆▆ The burden of proof in a request for the approval of professional fees and expenses is on the applicant. *In re Yankton College*, 101 B.R. 151 (Bankr.D.S.D. 1989), *see also In re Grimes*, 115 B.R. 639 (Bankr.D.S.D.1990).

▆▆▆ In evaluating an application for the approval of compensation and expenses, the Court utilizes the lodestar approach and the twelve factors recognized in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). However, the Court may reduce the fees otherwise payable to the debtor's counsel when counsel knew or should have known that conversion was inevitable. *See In re S & E Oil Co.*, 66 B.R. 6 (Bankr.W.D.La.1986), and *In re Freedlander, Inc., The Mortgage People*, 103 B.R. 752 (Bankr.E.D.Va.1989).

In *S & E*, Judge Bernhard noted that the debtor's attorney "allowed the tail to wag the dog" by letting his client oppose the efforts of the trustee and create unnecessary and costly delays in the administration of the case. Judge Bernhard then noted that "[l]ong prior to conversion it should have been obvious to counsel that the debtor would not be able to reorganize." *Id.* at 8. The Court then determined that twenty percent of the services rendered were not necessary, and the fee was reduced by that percentage.

In *Freedlander, supra,* Judge Shelley denied a portion of the debtor's attorney's fees, relying on *S & E* and noting that "[t]he 'writing on the wall' was even more clear in the instant case. Counsel should have restricted its efforts ... with conversion plainly in prospect. And Counsel should have ceased all work when ... it became apparent that conversion inexorably approached." *Id.* at 758. Fees were then reduced accordingly.

▆▆▆ Circumstances dictate that Attorney Lefholz should have known that this case was a candidate for conversion prior

to the October 3 hearing when conversion was ordered. It appears from the record that the debtor generated a significant portion of his income from the sale of timber taken off the ranch. The timber income was never divulged in the debtor's schedules. Moreover, much income was derived by the debtor from pasturing cattle and horses for other producers. The details of the pasturing arrangements came to light during the hearing. It is questionable whether proceeds from these activities would be classified as farm income under the Code. Income from timber harvesting is includable in farm income when such is done on a sustained yield basis and is part of an integrated farming operation. *In re Sugar Pine Ranch*, 100 B.R. 28 (Bankr.D. Or.1989). Here, the harvesting of timber is neither on a sustained yield basis nor a part of an integrated farming operation. Rather, it was a one time removal of timber from the ranch. Pasturing livestock in return for a fee and where the debtor is not exposed to the normal risks inherent in farming does not constitute farm income under the Code. *See*, e.g., *In re Hampton*, 100 B.R. 535 (Bankr.D.Or.1987) (custom farming for a fee does not constitute farm income under § 101(17) where the debtor bears no risk in raising and harvesting the crop), and *Armstrong v. Corn Belt Bank*, 55 B.R. 755 (Bankr.C.D.Ill.1985), *affd.*, 812 F.2d 1024 (7th Cir.1987) (debtor's income must have some connection with the inherently speculative nature of farm income).

It was revealed at the hearings that the debtor had generated $100,000.00 in income from the sale of timber and had sold over 1,200 acres of property to make payments under the Gull Ranch purchase agreement. The debtor was cannibalizing the ranch to fund its purchase and to pay current expenses. The only source of income listed in the debtor's schedules is for "cow care" which generated $2,500.00 per month. Realistically, this source of income would exist for only a limited period of time during any year. This raised the question of whether the debtor, in good faith, could propose a feasible plan.

It appears to the Court that the underlying problem was the inability of Attorney Lefholz to gain the complete cooperation and confidence of his client. As a result, Attorney Lefholz first learned of many facts at the hearings when the same should have been discovered from his client beforehand. The Court believes that the debtor and Attorney Lefholz had the duty to ascertain and present the debtor's true financial condition rather than fobbing off this process on Attorney Reid, whose extensive investigation exposed the fallacies of the debtor's schedules and proposed plan.

Attorney Lefholz had an obligation to determine whether there was any merit in the motions and objections raised by the creditors in this case. The volume and tenor of those motions should have alerted Attorney Lefholz of the fact that there were numerous problems and serious questions about the debtor's farming/ranching operation, and that confirmation was doubtful.

At several hearings Attorney Lefholz expressed his frustrations in trying to deal with a recalcitrant client. An attorney's remedy is to decline further representation, an option that Attorney Lefholz ultimately exercised in this case. *See* Rule 1.16(b) of the South Dakota Rules of Professional Conduct.[1] The Court will not condone or

---

1. Rule 1.16(b) and the comment to the Rule, as codified in the appendix to SDCL Title 16–18 provide, in salient part:

   [A] lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:

   (1) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

   (2) the client has used the lawyer's services to perpetrate a crime or fraud;

   (3) a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;

   (4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

   (5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

compensate efforts that are spent not reorganizing the debtor, but instead lending themselves to facilitating the debtor's malevolent efforts and motives. Attorney Lefholz was not under any compulsion to continue to represent Mr. Alderson. Mr. Lefholz's explanation for his withdrawal was a recognition of the very things previously discussed in this opinion. In the Court's opinion, Attorney Lefholz's cognition about his relationship with his client was long overdue. This is reflected in the Court's consideration of his fee application.

In summary, the Court believes that every debtor's attorney must discern the debtor's true financial condition to determine whether reorganization under the Bankruptcy Code is the proper course of action. Professor Thomas Jackson wrote:

> Bankruptcy law can and should help a firm stay in business when it is worth more to its owner alive than dead. That is a far cry, however, from saying that it is an independent goal of bankruptcy law to keep firms in operation. Not all businesses are worth more to their owners— or to society—alive than dead, and once one recognizes that, one has to identify *which* firms bankruptcy law should assist and why. Saying that bankruptcy law 'exists' to help keep firms in operation helps not at all in drawing that line.

T. Jackson, *The Logic and Limits of Bankruptcy Law* (1986).

The Court must determine at which point Attorney Lefholz knew or should have known that conversion of Alderson's case was plainly in prospect. A review of the hearings suggests that Attorney Lefholz knew or should have known this after the hearing on September 14, 1989. Too many inconsistencies and impediments had surfaced by that date. It had become apparent that the debtor was dissipating the assets of the Gull Ranch, and that many of his business transactions were fraudulent. It was clear that the debtor's schedules and statements were inaccurate and incomplete, and that the debtor's true financial condition could not be ascertained because of the debtor's propensity for fabrication. Mr. Alderson diverted efforts from reorganization to frustration of creditors. Therefore, the Court will allow attorney fees and costs only through September 14, 1989.

■ Attorney Lefholz requested fees and reimbursement for expenses totaling $11,525.65, including sales tax. His fee was set at $75.00 per hour. His fee application reflects that 79.3 hours were devoted to this case through September 14. Consideration of the twelve *Johnson* factors [2] leads the Court to conclude that the application is generally acceptable with the exceptions noted below. The Court deleted the following from those hours billed through September 14, as they appear to be ministerial in nature or of a benefit to Mr. Alderson personally rather than to the bankruptcy estate, *see In re Reed*, 890 F.2d 104 (8th Cir.1989):

| Date | Time | Comment |
| --- | --- | --- |
| 5–16–89 | .5 | Preparation of mailing matrix |
| 5–25–89 | .1 | Examination of letter from bankruptcy clerk |
| 5–26–89 | .2 | Call to client re: office appointment |
| 7–21–89 | .2 | Letter to client confirming 2004 exam |
| 8–7–89 | .2 | Call to Perle O'Daniel re: cattle |

(6) other good cause for withdrawal exists.

**2.** The factors to be considered under *Johnson* are:
1. the time and labor required
2. the novelty and difficulty of the questions
3. the skill required to perform legal services properly
4. the preclusion of employment due to acceptance of the case
5. the customary fee
6. whether the fee is fixed or contingent
7. time limitations imposed by the client or the circumstances
8. the amount involved and the results obtained
9. the experience, reputation and ability of the attorney
10. the undesirability of the case
11. the nature and length of the professional relationship with the client
12. awards in similar cases

| Date | Time | Comment |
|------|------|---------|
| 8–8–89 | .2 | Call from Perle O'Daniel re: cattle |
| 8–8–89 | 1.2 | Examination re: exemptions |
| 8–22–89 | .2 | Call to client re: office conference |
| 8–29–89 | 1.0 | Conference with client re: dischargeability |
| | Total 3.8 | |

Total hours allowed: 75.5 hours at $75.00 = $5,662.50
+ 6% tax = 339.75

Total $6,002.25

Attorney Lefholz also requests reimbursement for certain expenses incurred during the pendency of this case totaling $1,071.40. Expenses incurred through September 14 total $505.10. While the itemization of expenses lacks detail, the Court will allow them in full with the caveat that Attorney Lefholz provide more detailed itemization in future requests.

| | |
|---|---|
| Total fees allowed | $6,002.25 |
| Total expenses allowed | 505.10 |
| Grand Total | $6,507.35 |

■ Pursuant to § 726(b) of the Bankruptcy Code, Attorney Lefholz's fees and expenses will be subordinated to the § 503(b) administrative expenses that have been or will be incurred in this case since the date it was converted.

This constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52 and Bankruptcy Rules 7052 and 9014. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). The Court will enter an appropriate order.

ORDER DENYING RECONSIDERATION, ASSESSING TERMS AND APPROVING APPLICATION FOR COMPENSATION AND REIMBURSEMENT

Pursuant to the Memorandum Decision filed in this matter and executed this same date

IT IS HEREBY ORDERED that Attorney Rodney C. Lefholz's motion to reconsider the Court's order dated November 22, 1989, is denied.

IT IS FURTHER ORDERED that creditors Eunice Gull and Roger and Cindy Armstrong's motions for terms against Attorney Lefholz are denied.

IT IS FURTHER ORDERED that creditors Eunice Gull and Roger and Cindy Armstrong's motions for terms against debtor L.D. Alderson are granted.

IT IS FURTHER ORDERED that Attorney Rodney C. Lefholz's application for fees and reimbursement of costs is approved in the amount of $6,507.35, to be subordinated to the costs of administration of debtor's converted Chapter 7 case.